IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES H. TUKIS,

        Plaintiff,

    v.

CAROLYN COLVIN, Acting
Commissioner Social Security Administration,

        Defendant.

Civil No. 6:15-cv-00902-MA

OPINION AND ORDER

DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR  97405

JOHN E. HAAPALA, JR.
401 E 10th Avenue
Suite 240
Eugene, OR  97401

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney

1 - OPINION AND ORDER -

JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Avenue
Suite 600
Portland, OR 97204

KATHRYN A. MILLER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendant

MARSH, Judge.

        Plaintiff Charles H. Tukis seeks judicial review of the final decision of the Commissioner

of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social

Security Act, 42 U.S.C. §§ 401-403, 1381-1383f (the "Act"). This Court has jurisdiction pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I AFFIRM the decision of the

Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

        Plaintiff protectively filed an application for DIB and SSI on December 16, 2011, alleging

disability beginning January 1, 2008, due to epilepsy, attention deficit hyperactivity disorder

("ADHD"), sleep apnea, headaches, and depression. Plaintiff's claims were denied initially and

upon reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge

("ALJ"). ALJ Elizabeth Watson held a hearing on November 15, 2013, at which plaintiff appeared

with his attorney and testified. At the hearing, plaintiff amended his alleged onset date to January

1, 2010. A vocational expert ("VE"), Vernon G. Arne, also appeared at the hearing and testified. On December 16, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review and, therefore, the ALJ's decision became the final decision of the Commissioner for the purposes of review.

Plaintiff was born on July 6, 1977, and was 32 years old as of his alleged onset of disability date. Plaintiff completed high school with a regular diploma, but attended an alternative/special education school. Plaintiff had past relevant work as a laborer in a recycling facility, as a seasonal wreath maker, a cardboard bailer, and a hockey stick shaper.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded plaintiff met the insured status requirements of the Act through September 30, 2011. A claimant seeking DIB under Title II must establish disability on or prior to the date last insured. 42 U.S.C. § 416(l)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found plaintiff has the following severe impairments: ADHD, generalized convulsive epilepsy without mention of intractable epilepsy, obesity, and GERD/dyspepsia. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform medium work, with the following limitations: plaintiff can climb ramps and stairs frequently, but he should never climb ladders, ropes, or scaffolds; he can kneel, stoop, crouch and crawl on a frequent basis; he should avoid all exposure to operational control of moving machinery, hazardous machinery, and unprotected heights; and plaintiff is able to understand and carry out only simple instructions and he can tolerate no more than occasional interaction with the public and coworkers.

At step four, the ALJ found plaintiff is capable of performing past relevant work as a wreath maker. The ALJ made alternative findings at step five and concluded there are other jobs existing in the national economy that plaintiff is able to perform, such as garment bagger, marker, and attendant-storage rentals. Accordingly, the ALJ concluded plaintiff has not been under a disability under the Act from January 1, 2010, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated plaintiff's testimony; (2) the ALJ improperly rejected the medical opinion of the evaluating psychiatrist, Jill E. Spendal, Psy.D.; and, (3) the ALJ improperly assessed plaintiff's

RFC and the hypothetical to the VE did not account for limitations supported by the record evidence.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039.  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

The ALJ gave several reasons for finding plaintiff's statements concerning the intensity, persistence, and limiting effects his symptoms were not entirely credible:  (1) plaintiff stopped working for reasons other than medical disability; (2) plaintiff gave inconsistent statements about his symptoms; (3) plaintiff failed to follow up on recommended diagnostic procedures and/or referral to a neurologist; (4) plaintiff's claim that he performs tasks too slowly to sustain a production-paced job was contradicted by evidence in the record; and (5) the overall record did not support the degree of severity plaintiff alleged with respect to his inability to work because he could not get along with others.

The ALJ determined that plaintiff stopped working in 2010 for reasons unrelated to his health. Tr. 23. Plaintiff does not dispute this finding, which is a valid reason to discredit a claimant's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 833 (9th Cir. 2001) (claimant's statement that he left his job because he was laid off, rather than because of disability, was one of three sufficient reasons for disregarding claimant's pain testimony); *Asbury v. Colvin*, Case No. 3:14-cv-01425-BR, 2015 WL 6531325 at *7 (D. Or. Oct. 28, 2015) (holding that an ALJ properly discredited the plaintiff's testimony because the plaintiff left his job for nondisability-related reasons).

The ALJ also determined that plaintiff made inconsistent statements about the nature of seizure-like episodes he was experiencing. Plaintiff reported to Kenneth Sansome, M.D., his treating physician, that he had tiny seizure-like "episodes" lasting one or two minutes at a time, but at the hearing he testified the episodes lasted ten minutes. Plaintiff also told Dr. Sansome that he no postictal symptoms associated with the episodes, but testified that he had to ease himself back into activity.

The ALJ also found plaintiff failed to follow up on recommended diagnostic procedures and/or referral to a neurologist for evaluation of the "episodes," which suggested to the ALJ that the problem does not cause significant functional limitations. A relevant factor to an ALJ's credibility determination may include "unexplained, or inadequately explained, failure to seek treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quotation omitted). The record is not clear, however, as to whether plaintiff actually followed up with a neurologist.

On December 11, 2012, Dr. Sansome noted plaintiff was to undergo an MRI evaluation of seizure disorder and that plaintiff would be seeing a neurologist after the MRI. Tr. 466. On January 8, 2013, Dr. Sansome noted that plaintiff was seeing a neurologist about his seizures, that "apparently a workup is in progress," and that "[t]he neurologist did not want [plaintiff] to change any of his medications." Tr. 464. At the hearing on November 15, 2013, however, when asked if he had a neurological examination, plaintiff replied "[n]one that I could, that I could remember." Tr. 58. In light of this contradictory evidence, I find that the ALJ's use of plaintiff's failure to follow up on medical treatment in determining adverse credibility is error.

The ALJ also had difficulty accepting plaintiff's claim that he performed tasks too slowly to sustain a production-paced job given that plaintiff was invited back to seasonal work, year after year, in a job requiring such activity. Tr. 24. Moreover, the ALJ noted plaintiff's performance on Mental Status Exam tasks did not display significant issues with pacing. Tr. 24.

Finally, the ALJ found plaintiff less than credible because the record showed his social limitations were not so severe that these limitations precluded work. Tr. 24. The ALJ observed that plaintiff presented as a very likeable and agreeable individual at the hearing, even laughing when appropriate. Tr. 24. Plaintiff testified that he continued to socialize with friends on a regular basis and initiated a new intimate relationship when he moved to Oregon. Tr. 24. Plaintiff also testified that he successfully learned to control his temper, irritability, and frustration in the workplace to avoid being fired, and that he had never been fired from a job for such reasons. Tr. 24. Dr. Spendal described plaintiff as "friendly and easy to establish a rapport with," and that he "tended to joke a lot when speaking." Tr. 439. Thus, the ALJ's conclusion that plaintiff's social

limitations were not so severe that these limitations precluded work is supported by substantial evidence in the record.

Of the bases the ALJ cited to justify his determination that plaintiff was not entirely credible, only one was not supported by the evidence. However, when an ALJ errs in making an adverse credibility finding, "so long as there 'remains substantial evidence supporting the ALJ's conclusions . . . and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197). Substantial evidence supported the remaining bases relied upon the ALJ. Accordingly, the overall adverse credibility finding is upheld.

## II.    Dr. Spendal's Opinion

The ALJ is responsible to resolving conflicts in the medical record, including conflicts among physician's opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim*, 763 F.3d at 1161. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195.

Dr. Spendal conducted a one-time cognitive, learning, and psychosocial assessment of plaintiff. Tr. 435-456. Dr. Spendal opined, *inter alia*, that plaintiff required a job coach and/or an extended training period, and that he might need someone nearby to help him stay on task. Tr. 450. The ALJ gave Dr. Spendal's opinion partial weight, explaining:

> While I agree that a job with limited multitasking is warranted based on the totality of the evidentiary record, I do not find support for the need to have a job coach and/or an extended learning period. Such limitations are inconsistent with the claimant's ability to sustain competitive employment in the past and with the lack of evidence showing any significant worsening in the severity of his symptoms since he had such success. Moreover, the fact that the employer who hired him for seasonal wreath making chose to rehire him for several years in a row strongly suggests that the claimant did not require any additional attention and that his job performance was satisfactory. I simply did not find any remarks or observations by either physician in the record to support such significant work accommodations.

Tr. 25.

Plaintiff complains that the ALJ erred by affording only "partial weight" to Dr. Spendal's opinion. Specifically, plaintiff argues the ALJ erred in finding no support for Dr. Spendal's opinion that plaintiff required a job coach and/or an extended training period. Plaintiff contends this was in error because other physicians supported these recommended work accommodations, because his prior seasonal work as a wreath-maker was not a sufficient basis for the ALJ to discount the suggested accommodations, and because his own testimony reveals his problems with pace at work.

Plaintiff argues that two state agency reviewing psychologists, Joshua Boyd, Psy.D. and Paul Rethinger, Ph.D, endorsed Dr. Spendal's additional work recommendations when they explicitly gave "great weight" to Dr. Spendal's medical opinion. When the ALJ afforded the two psychologists' opinions "substantial weight," plaintiff reasons, the ALJ implicitly gave weight to Dr. Spendal's accommodations.

Both Dr. Boyd and Dr. Rethinger gave "great weight" to Dr. Spendal's opinion that plaintiff would "need a job with limited multitasking . . . [and] limited interpersonal contact." Tr. 87, 133. Neither, however, endorsed Dr. Spendal's recommendation for a job coach and/or an extended training period. Instead, both doctors considered Dr. Spendal's relevant findings on a Mental Residual Functional Capacity Form and made similar assessments in their reports. Tr. 85-87, 131-133. Moreover, Dr. Spendal's opinion was directly contradicted by another examining physician, Frank Lahman, Ph.D. Dr. Lahman opined that plaintiff retained the mental capacity to "engage in work similar to what he had performed in the past," so long as he had "relative isolation from peers and clearly defined performance expectations." Tr. 304.

Plaintiff further argues that the ALJ erred in finding the accommodations suggested by Dr. Spendal were inconsistent with plaintiff's ability to sustain prior seasonal employment as a wreath maker. From 2004 to 2009, plaintiff performed work as a seasonal wreath maker; plaintiff earned $8.75 an hour and worked 40 hours per week for six weeks at a time each year. The ALJ reasonably concluded the fact that plaintiff's employer consistently rehired him strongly suggested that Plaintiff did not need additional attention and this his job performance was satisfactory. A claimant's activities that conflict with a physician's opinion of limitations are a legitimate basis for an ALJ to consider in determining the weight that physician's opinion deserves. *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989).

Finally, the ALJ found plaintiff's allegations of disability not entirely credible. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *See Tommasetti*, 533 F.3d at 1041 ("[a]n ALJ may

reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible); *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (same). I conclude the ALJ's credibility analysis lends additional substantial evidence supporting the partial rejection of Dr. Spendal's opinion in the context of the decision as a whole.

The ALJ provided specific and legitimate reasons, backed by substantial evidence in the record as a whole, to partially reject Dr. Spendal's opinion.

## III.    Plaintiff's RFC and the VE's Testimony

Plaintiff contends the ALJ erred because plaintiff's limitations in pace, ability to concentrate, and persist were not adequately conveyed to the VE in the RFC restriction to "simple instructions."[1]    Accordingly, plaintiff contends the hypothetical posed by the ALJ to the VE did not include all of plaintiff's limitations and is not supported by substantial evidence.

An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony, such as the ability to carry out simple tasks, or simple, routine, repetitive tasks. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, when determining plaintiff's RFC with respect to his ability to perform mental requirements of work, the ALJ gave substantial weight to the opinions of the State agency non-examining advisors and to Dr. Lahman. Tr. 24, 25. Dr. Lahman specifically concluded that plaintiff should be capable of returning to similar, simple work as he performed in the past. Tr. 304. Both Dr. Wiggins and Dr. Rethinger concluded plaintiff

---

[1]Plaintiff also argues Dr. Spendal's recommended accommodations for success in the workplace, such as additional supervision, workplace with limited distractions, and extra time to complete tasks were also not reflected in the RFC. As discussed above, however, the ALJ provided clear and convincing reasons not to credit Dr. Spendal's opinion on these issues.

would need a job with limited multi-tasking, but that he "would have no problems with simple routine tasks." Tr. 89, 120. The ALJ gave less weight to Dr. Spendal's opinion. Tr. 25.

The ALJ reasonably incorporated the relevant limitations in concentration, persistence, and pace based on the medical testimony of Dr. Lahman and the opinions of the state agency psychological consultants, all of whom specifically found plaintiff's could perform "simple" work. Accordingly, the ALJ's RFC assessment reasonably incorporated the plaintiff's mild to moderate difficulties in concentration, persistence, and pace. The ALJ's reliance on the VE's response to the hypothetical was therefore proper. *Bayliss*, 427 F.3d at 1217.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _2_ day of August, 2016.

Malcolm F. Marsh
United States District Judge

13 - OPINION AND ORDER -